ORIGINAL

**FILED UNDER SEAL
PURSUANT TO ORDER SEALING RECORD
DATED FEBRUARY 24, 2005**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **CASE UNDER SEAL** | : | Case No. 3:05CV7063 |
| Cooper Tire & Rubber Co., | : | |
| Plaintiff, | : | JUDGE KATZ |
| | : | JUDGE CARR |
| v. | : | |
| Jason M. Shinn, | : | |
| Defendant. | : | |

**PLAINTIFF'S PRE-HEARING MEMORANDUM REGARDING
DEFENDANT'S NOVEMBER 12, 2005 LETTER TO THE COURT**

**I.  INTRODUCTION**

The parties are before this Court because Defendant Jason M. Shinn ("Mr. Shinn") is asserting groundless claims of ethical violations against Plaintiff's counsel to obscure his own persistent failure to implement, in good faith, several prior agreements that he signed regarding the identification, extraction, and disposition of Plaintiff Cooper Tire & Rubber Co.'s attorney-client privileged information and confidences from his personal computer hard drive.

**II.  BACKGROUND AND PROCEDURAL HISTORY**

On November 12, 2005, Mr. Shinn delivered a letter to the Court claiming that Brad Hughes ("Mr. Hughes"), one of the attorneys for Plaintiff Cooper Tire & Rubber Co. ("Cooper Tire"), violated Disciplinary Rule 9-101(C) during a July 26, 2005 conference call in which Mr. Hughes, Mr. Shinn and an employee of the Court's Special Master, Nate Lindall of Kroll

Ontrack, Inc., were the participants. Mr. Shinn alleges that Mr. Hughes represented on the call that "because of the relationship Mr. William Connelly shares with [the Court], [Mr. Shinn] would not obtain a favorable outcome if [he] persisted in litigating the matter before this Court." The Court set the matter for hearing before Judge Carr on November 29, 2005. Mr. Hughes and Cooper Tire unequivocally deny these allegations.

Recognizing that Judge Carr has not presided over this matter, Cooper Tire submits this memorandum so that the Court can know the content in which these allegations arise and to respond to those allegations both factually and legally.

### A. The Court's February 2005 Temporary Restraining Order

Cooper Tire filed this action and sought a temporary restraining order ("TRO") against Mr. Shinn in February 2005, seeking to bar Mr. Shinn from disclosing confidential information regarding Cooper Tire that he had obtained from Cooper Tire or Cooper & Walinski, LPA ("C&W"), where Mr. Shinn had worked and provided legal services to Cooper Tire. Cooper Tire supported its Complaint for TRO with sworn statements from Mr. Shinn's former supervisor at C&W attesting that, *after* being removed from Cooper Tire matters, Shinn e-mailed highly confidential and sensitive information relating to Cooper Tire via the Internet from his C&W computer to his personal Yahoo! e-mail account. This litigation, and the motion for TRO, were brought after Mr. Shinn threatened to publish an article relating to his Cooper Tire work – a threat that followed by only four days a threat to sue the Cooper & Walinski firm.

This Court, based on its finding that immediate and irreparable injury would befall Cooper Tire in the absence of a TRO, entered same on February 24, 2005. The Court's TRO bars Mr. Shinn from publishing or otherwise revealing any attorney-client privileged information

2

or confidences that he gained through his professional relationship with Cooper Tire. The Court also ordered Mr. Shinn to return all such information in his possession.[1]

**B.     The Parties' March 2005 Agreement.**

On March 22, 2005, minutes before Mr. Shinn's deposition began in advance of a preliminary injunction hearing, the parties engaged in settlement negotiations *at Mr. Shinn's request.* These negotiations resulted in an agreement that Mr. Shinn and his former counsel executed, and which was filed with the Court on March 23, 2005 (the "March 23 Agreement").[2] As part of this March Agreement, Mr. Shinn *agreed* to the entry of a permanent injunction, *agreed* that he had attorney-client and confidential Cooper Tire information ("CT Confidential Information") in his possession, and *agreed* to the Court's appointment of Kroll Ontrack, Inc. as Special Master to supervise the inspection and analysis of Shinn's computer for the presence of additional Cooper Tire confidences and to "erase, remove, or otherwise disable access" to any such information.[3]

**C.     The Court's May 2005 Rule 53 Order Appointing Special Master.**

On May 2, 2005,[4] the Court signed a detailed Agreed Order Appointing Special Master ("Order Appointing Kroll") for this purpose. The Order Appointing Kroll was the result of extensive negotiations – it took over a month to reach agreement – during which Mr. Shinn was

---

[1] *See* February 24, 2005 Temporary Restraining Order. On March 15, 2005, this Court modified its TRO upon Shinn's motion. This Court's Modified TRO remains in full force and effect pending the completion of the Special Master's work and the entry of a permanent injunction. The agreed TRO continues to prohibit Shinn from publishing, disclosing, making public, disseminating, or in any way revealing Cooper Tire's attorney-client privileged information, work-product, or confidences.

[2] *See* March 23, 2005 Agreement.

[3] *See id.*

[4] *See* May 2, 2005 Order Appointing Special Master.

3

represented by counsel (Mssrs. McHugh and Mosier). The Order Appointing Kroll outlined the procedures that the parties and the Special Master anticipated would permit the identification, review, and extraction of two different categories of CT Confidential Information that Mr. Shinn could access from his home computer: (1) e-mails on Mr. Shinn's personal Yahoo! e-mail account containing or referring to CT Confidential Information; and (2) files on Mr. Shinn's personal computer hard drive containing or referring to CT Confidential Information.[5] The parties negotiated the procedures set forth in the Order Appointing Kroll based on information available at the time, and Kroll approved them before the Order was submitted to the Court. These procedures were, of necessity, negotiated by the parties *before* Kroll had performed a keyword search of Mr. Shinn's computer to identify what, and how much, CT Confidential Information resides on his hard drive.

Significantly, while the parties were negotiating the provisions of the Order Appointing Kroll, Mr. Shinn represented that, to the best of his knowledge, he either had not downloaded confidential CT Confidential Information from his Yahoo! email account to his home computer or it was no longer there. While Mr. Shinn qualified his representation by saying that the could not be certain what was on the hard-drive, subsequently developed evidence strongly suggests that the quantity of CT Confidential Information placed on the hard-drive is such that no reasonable person could have forgotten that it had been placed there.

### D. The Parties Agreed On A Method To Dispose Of Yahoo! E-mails Containing CT Confidential Information.

Mssrs. Shinn, Hughes, and the Special Master met in May 2005 to address one of the categories of electronic CT Confidential Information described in the Court's Rule 53 Order—the e-mails on Mr. Shinn's personal Yahoo! account. As a result of that meeting and subsequent

---

[5] *See id.* at 2-12.

4

telephone meet-and-confer sessions, the parties agreed to a solution—that still has not been implemented—regarding the disposition of certain e-mails in Mr. Shinn's Yahoo! account containing or referring to CT Confidential Information. Specifically, in an Agreed Entry filed on August 12, 2005, the parties agreed that Kroll would, in the presence of Mr. Shinn and a Cooper Tire representative, make a copy of all e-mails and/or attachments from Mr. Shinn's Yahoo! account that contain or refer to any CT Confidential Information, place those materials in a sealed envelope, delete the corresponding e-mails from Mr. Shinn's Yahoo! account, and place the sealed envelope in trust at National City Bank.[6] The August 12 Entry also provides Mr. Shinn a means to review those materials in the future upon proper notice to Cooper Tire.[7] Although the August 12 Entry also established a similar "trusteeship" arrangement for any CT Confidential Information identified on Mr. Shinn's personal computer hard drive,[8] for reasons described more fully *infra*, the parties have had far less success in implementing the Court's Civ. R. 53(b) Order Appointing Kroll with respect to *identifying* and *extracting* that information from Mr. Shinn's hard drive.

### E. Mr. Shinn's Belated And Improper Attempt To Assert Counterclaims Against Cooper Tire.

Mr. Shinn alleges in his November 12 Letter to the Court that Mr. Hughes violated DR 9-101(C) on a conference call that occurred on July 26, 2005. Mr. Shinn fails to inform the Court in his letter about the procedural context in which that call took place. The July 26, 2005 call, which concerned a draft of the August 12 Agreed Entry just described, was the direct result of two intemperate actions taken by Mr. Shinn took in June that prompted Cooper Tire to seek

---

[6] *See* August 12, 2005 Agreed Entry at 2-3.

[7] *See id.* at 3.

[8] *See id.* at 3-4.

5

relief from the Court via a Motion for Order Enforcing Settlement Agreements and for Sanctions.

First, on June 20, 2005, four months after Cooper Tire had filed and served its Complaint for TRO (in February), and long after the matter had been settled (in March) and the Special Master appointed to implement that settlement (in May), Mr. Shinn inexplicably submitted to the Court an untimely "Answer, Counterclaim Against Cooper Tire, And Demand For Jury Trial."[9] This document was signed, served, and submitted by Mr. Shinn himself, even though he was represented by counsel at the time.[10] (Those counsel understandably moved to withdraw—a request that the Court granted after conducting a telephone conference of counsel.[11]) Mr. Shinn's out-of-rule pleading was a direct violation of the agreements the parties had previously signed and the Court had formally entered to resolve this litigation in both March and May 2005.

Second, shortly after lodging his untimely Answer and Counterclaim, Mr. Shinn submitted a written settlement demand for $75,000.00 to Cooper Tire. Then, late in the evening of June 29, 2005, Mr. Shinn contacted Bill Connelly, one of Cooper Tire's counsel, at his private residence, and profanely warned him that (1) this case would be a "street fight;" (2) both parties would "get hurt"; and (3) Cooper Tire had better get this "f*cking" case settled.

Mr. Shinn's unusual and unprofessional actions resulted in Cooper Tire's July 1, 2005 Motion for an Order Enforcing Settlement Agreements. The Court held telephone conferences pertaining to Cooper Tire's Motion on July 5 and July 20, and set an August 11 hearing date.

---

[9] *See* Defendant's June 20, 2005 Answer, Counterclaim Against Cooper Tire, and Demand for Jury Trial.

[10] *See id.* at 16-17.

[11] *See* June 23, 2005 Motion to Withdraw as Counsel of Record.

The Court urged the parties to negotiate to avoid the necessity for an evidentiary hearing on Cooper Tire's Motion, which requested that sanctions be levied against Mr. Shinn.

### F. Mr. Shinn's Ethical Allegations Against Mr. Hughes Arose During A Conference Call Regarding A Draft Of The August 12 Agreed Entry.

The July 26 conference call that involved Mssrs. Hughes, Shinn, and Lindall that is at issue in Mr. Shinn's November 12 letter to the Court occurred as part of the negotiations the Court had urged, and concerned a draft of what became the August 12 Agreed Entry that Cooper Tire had e-mailed to Mr. Shinn for his review and comment.

During the call on July 26, Mr. Shinn complained about certain provisions in the draft Agreed Entry. Mr. Hughes explained that the draft Entry was an attempt to resolve Cooper Tire's pending Motion to Enforce as well as Mr. Shinn's untimely Answer and Counterclaim, which would allow the parties to move forward with the inspection of Mr. Shinn's hard drive while avoiding an evidentiary hearing at which sanctions could be imposed. Mr. Shinn dismissed Mr. Hughes's suggestion that there was any basis for sanctions. Mr. Hughes noted that the Court likely would not be impressed to hear details of Mr. Shinn's late-night and profanity-ridden phone call to Mr. Connelly's private residence. Mr. Shinn denied that he had used profanity on the call. Mr. Hughes noted that Mr. Connelly was well-known to the Court, and that he was an experienced attorney with decades of practice in Toledo who would likely make a very credible witness at an evidentiary hearing. Mr. Shinn specifically noted in the presence of Mr. Lindall that Mr. Hughes's comments regarding the "relationship" between Mr. Connelly and the Court were improper. Mr. Hughes disagreed and attempted to clarify his statements. The parties then continued negotiating the provisions of the Agreed Entry, which was eventually filed on August 12, 2005.

On July 29, 2005, three days after that call, and less than two hours after Mr. Shinn had e-mailed Mr. Hughes a marked-up draft of the Agreed Entry (which e-mail contained no allegation of unethical conduct), Mr. Shinn sent a separate e-mail and attached letter to Bill Connelly. In that letter, Mr. Shinn alleged that "Mr. Hughes made comments to the effect that because of the relationship you have with Judge David A. Katz that I would not obtain a favorable outcome were I to continue to litigate the above matter." Mr. Shinn also alleged that Mr. Connelly had made an "affirmative choice to seek out Judge Katz as the judge in this matter as opposed to complying with the normal assignment procedures for district court judges," and that Judge Katz had "accept[ed] documents and testimony, *ex parte,* from [Cooper Tire]." On August 2, 2005, because Mr. Hughes was out of the office, Mr. Trafford responded to—and firmly denied—each of Mr. Shinn's allegations via e-mail on behalf of Mr. Hughes, Mr. Connelly, and Cooper Tire.

### G. The Parties Have Had Great Difficulty In Agreeing On A Method To Implement The Court's Rule 53 Order Regarding The Identification And Extraction Of Confidential Cooper Tire Information From Mr. Shinn's Hard Drive.

Although the Court's Rule 53(b) Order Appointing Special Master established a framework for identifying and extracting CT Confidential Information from Mr. Shinn's personal computer hard drive, that framework has since proven to be extremely burdensome to implement – primarily because Mr. Shinn was wrong when he said there should be no confidential Cooper Tire information remaining on his hard drive.

The Court's Order Appointing Kroll established a procedure whereby, after Kroll's keyword search of Mr. Shinn's hard drive (using keywords supplied by Cooper Tire and Mr. Shinn) Mr. Shinn would first review "preview panes"[12] of all "hits" resulting from the keyword

---

[12] "Preview panes" are a device by which the parties can review a certain number of words before and after a keyword "hit" on an electronic document, without reviewing the entire

8

search to determine whether the "hits" identified CT Confidential Information subject to the Court's injunction, or whether they concerned his own attorney-client privileged materials related to this litigation or other, non-Cooper Tire matters. The Order Appointing Kroll then established procedures for logging Mr. Shinn's allegedly privileged materials, resolving his privilege claims, and extracting CT Confidential Information from Mr. Shinn's hard drive in its native format. In the Order Appointing Kroll, Cooper Tire agreed to pay the Master's compensation related to its duties under that Order.

The impracticality of the procedures established in the Court's Civ. R. 53(b) Order—procedures *both parties* had agreed to after extensive negotiations, with Kroll's blessing—was not evident until Kroll conducted its first keyword search of Mr. Shinn's hard drive in late August 2005. Kroll then circulated two numerical "Search Summaries" to the parties. These Search Summaries vividly illustrate the *massive* number of files on Mr. Shinn's personal hard drive which, based on keyword searches of the hard drive, are likely to contain CT Confidential Information subject to the Court's restraining order.

Kroll's first keyword Search Summary, for example, resulted in literally *millions* of "hits" on Mr. Shinn's hard drive that would need to be reviewed, in the first instance, by Mr. Shinn for the presence of his own attorney-client privileged information. In an effort to reduce the unmanageable number of hits and expedite the process, Cooper Tire agreed to limit Kroll's keyword search to only the *active* files on Mr. Shinn's hard drive. But even Kroll's second Search Summary – this time of only "active" files – that was distributed to the parties on November 9, 2005, revealed *thousands* of "hits" on likely CT Confidential Information in Mr. Shinn's active files.

document, in order to assess the context of the "hit" and determine whether the document requires further review.

In the short time that elapsed between receipt of Kroll's second Search Summary on November 9 and Mr. Shinn's letter to the Court on November 12, Cooper Tire diligently negotiated with Mr. Shinn in an attempt to agree on a more efficient and cost-effective procedure for identifying, extracting, and disposing of CT Confidential Information on Mr. Shinn's hard drive. On a November 11 conference call with Mr. Shinn, for example, counsel for Cooper Tire noted that Cooper Tire was surprised, based on Mr. Shinn's prior representations that no Cooper Tire confidential information remained on his hard drive, at the extremely high number of Cooper Tire-related "hits" on the active files of his hard drive; that this high number of "hits" would make the existing protocol very time-consuming and expensive; and that the parties should consider alternatives (including the use of a replacement hard drive—a procedure Mr. Shinn himself had previously advocated) that would lessen the burdens on the parties and the Court's Special Master. Cooper Tire informed Mr. Shinn on this November 11 conference call that, if he was unwilling to explore less burdensome and less costly alternatives, Cooper Tire might return to Court to ask that he be required to share the financial burden of the process that he was making unnecessarily difficult and expensive.

Mr. Shinn responded to Cooper Tire's November 11 attempt at compromise in four decidedly un-productive ways. First, on November 12, he sent his letter to the Court falsely alleging that counsel for Cooper Tire had committed an ethical lapse in a conference call on an unrelated issue four months ago. Second, the following day, Mr. Shinn sent a uniquely password-protected settlement demand (with the password "Jpts0n_cOkehead") to Cooper Tire, requesting that it be delivered to Cooper Tire's CEO *without review by counsel*, and demanding **$10,000** from Cooper Tire in exchange for an agreement to go forward using one of the less burdensome alternatives the parties had discussed (which involves placing his hard drive into

10

trust after transferring non-CT Confidential Information to a replacement hard drive) **and to withdraw his November 12 letter to this Court**. Third, on November 15, the day after this Court issued its Order setting the November 29 hearing in this matter, Mr. Shinn sent another email to Cooper Tire's counsel, threatening to publish an article which mentioned Mr. Trafford and Cooper Tire's General Counsel, James Kline, by name and which disclosed, in a derogatory and inflammatorily misleading way, much of what has transpired in connection with this case as part of the effort to remove from Mr. Shinn's hard drive material that should not be there and which he agreed nine months ago to remove. Finally, on November 16, Mr. Shinn sent a letter mockingly requesting an autographed photograph of Cooper Tire's general counsel, Mr. Kline.

Mr. Shinn, himself an attorney who has been proceeding *pro se* since his own attorneys withdrew from his representation, should cease this unprofessional behavior and allow this process to conclude. As shown below, Mr. Shinn's allegations pertaining to DR 9-101(C) are unfounded, and there is no basis whatsoever for questioning Judge Katz's ability to preside over this case.

### III. ARGUMENT

For the reasons set forth below, Cooper Tire denies the assertions contained in Mr. Shinn's November 12 Letter. Simply put, neither Mr. Hughes nor any other Cooper Tire counsel has stated or implied to Mr. Shinn that Mr. Connelly could "influence improperly or upon irrelevant grounds [this] tribunal," as DR 9-101(C) prohibits.

Mr. Shinn's groundless ethical charges against Mr. Hughes—who has negotiated in good faith with Mr. Shinn for *months* in this matter in an attempt to conclude it finally—are clearly an attempt to distract the Court and the parties from the fact that Mr. Shinn has persistently refused to agree to a reasonable and cost-efficient process regarding the identification, extraction, and

11

disposition of privileged and confidential Cooper Tire information contained on his personal computer hard drive that is subject to the Court's restraining order entered February 24, 2005.

Cooper Tire respectfully seeks an Order (1) rejecting Mr. Shinn's allegations regarding DR 9-101(C) and (2) rejecting his suggestion that Judge Katz is in any respect disqualified from presiding in this matter.

### A. Mr. Hughes Did Not Violate DR 9-101(C) On The July 26 Conference Call.

As Mr. Trafford explained to Mr. Shinn in his August 2, 2005 e-mail response to Mr. Shinn's allegations regarding DR 9-101(C), there is a key difference between suggesting that an attorney would be a credible witness at an evidentiary hearing, based on that attorney's reputation and decades of practice before the judge, and suggesting that the attorney could or would *improperly influence the tribunal's independent decision making process*, as DR 9-101(C) prohibits. A brief survey of cases since 1977 in which the Ohio Supreme Court has imposed discipline pursuant to DR 9-101(C) provides examples of the kind of conduct that violates DR 9-101(C):

- In *Dayton Bar Assn. v. O'Brien*, 103 Ohio St.3d 1, 812 N.E.2d 1263 (Ohio 2004), the Court disciplined an attorney under DR 9-101(C) who told his client that the trial judge preparing to sentence him might be persuaded to withdraw the client's guilty plea if the client had enough money "to afford that kind of treatment."

- In *Cincinnati Bar Assn. v. Young*, 89 Ohio St.3d 306, 731 N.E.2d 631 (Ohio 2000), the Court disciplined an attorney under the rule who repeatedly engaged in the "appalling conduct" of sexually harassing multiple female law-school employees, warning them that he could improperly influence Ohio's Board of Commissioners on Character and Fitness based on his evaluations of them.

- In *Disciplinary Counsel v. Atkin*, 84 Ohio St.3d 383, 704 N.E.2d (Ohio 1999), the Court disciplined an attorney under 9-101(C) who obtained $550.000 from a client after telling the client that he could use those funds to bribe United States District Judge George W. White, Jr.

- In *Disciplinary Counsel v. Cicero*, 78 Ohio St.3d 351, 678 N.E.2d 517 (Ohio 1997), the Court disciplined an attorney under 9-101(C) when that attorney told several members of

12

the bar, including an assistant prosecutor, that he was having an ongoing sexual relationship with a judge, and that the judge would likely deny a continuance because of the judge's desire to get the case resolved so that she could engage in sex with the attorney over the Christmas holidays.

- In *Columbus Bar Assn. v. Benis,* 5 Ohio St.3d 199, 449 N.E.2d 1305 (Ohio 1983), the Court disciplined an attorney under the rule when he told a client that, for $10,000, he could use a friend in the Governor's office to successfully pursue a clemency application for the client's husband, who had been incarcerated for burglary.

- In *Ohio State Bar Assn. v. Consoldane,* 50 Ohio St.2d 337 (Ohio 1977), the Court disciplined an attorney under DR 9-101(C) when he told a client that, for $2,500, he would bribe other persons in the Trumbull County court system to obtain shock probation for the client.

Mr. Hughes's comments to Mr. Shinn on the July 26, 2005 conference call did not suggest, as these other attorneys' statements certainly did, that this tribunal's independent decisionmaking process could be bought, sold, or otherwise coerced by Mr. Connelly or any other Cooper Tire attorney in contravention of DR 9-101(C). A statement that a lawyer will likely be a credible witness by virtue of many years of distinguished practice before the Court in which he is to appear is not a statement that a lawyer can or would "influence improperly or upon irrelevant grounds any tribunal." DR 9-101(C).

### B. There Is No Basis For A Finding That Judge Katz Is In Any Way Disqualified From Presiding Over These Proceedings Or That He Should Or Must Recuse Himself.

Caselaw interpreting the federal recusal statute, 28 U.S.C. § 455(a), further demonstrates that personal familiarity of judges with attorneys, which is of course quite common, neither calls into question the impartiality of the tribunal nor requires judges to recuse themselves.

As the Sixth Circuit has noted, recusal is required in a case "only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Easely v. University of Mich. Bd. of Regents,* 853 F.2d 1351, 1356 (6th Cir. 1988) (affirming denial of recusal motion that was based on the district judge's affiliation with a law

13

school, even though the law school was a party to the litigation). The standard is objective; "hence, the judge need not recuse himself based on the 'subjective view of a party' no matter how strongly that view is held." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990).

"Mere friendship between the judge and a person with an interest in the case is ordinarily insufficient to warrant recusal." 12 James Wm. Moore et al., Moore's Federal Practice § 63.35 (2005) (citing cases). A rule requiring a judge to recuse himself when the actions of a judge's "friends" were at issue would be "utterly disabling" to courts. *Cheney v. United States District Court for the District of Columbia et al.*, 541 U.S. 913, 916, 124 S.Ct. 1391, 1394-95 (2004). As District Judge Spiegel once put it, in declining to recuse himself from a matter in which a supporter of his nomination was a party:

> I practiced law in this community for over thirty-one years and naturally am acquainted with many of the attorneys and parties who come before the Court.
> \*\*\*
> I am now confident of my ability to decide the merits of cases that come before me in a fair and impartial manner, regardless of prior associations I may have had with the parties. I also now believe that an appearance of impropriety is not created every time a person with whom I am acquainted comes before the Court. We have had a number of opportunities in the last two years to decide cases involving acquaintances of the Court and believe that we rendered as fair a decision as the litigants would have received in any Court.

*Warner v. Global Natural Resources PLC, et al.*, 545 F.Supp. 1298, 1301 (S.D. Ohio 1982).

Other than his self-serving characterization of the July 26 conference call, which divorces that call from its context in this case and misstates and misinterprets Mr. Hughes's comments, Mr. Shinn provides no basis for his assertion that Mr. Hughes violated DR 9-101(C), or for his suggestion that Judge Katz should not preside over this case.

14

## IV. CONCLUSION

For the foregoing reasons, Cooper Tire respectfully requests this Court to enter an Order (1) rejecting Mr. Shinn's allegations regarding DR 9-101(C) and (2) rejecting any suggestion that Judge Katz should not preside over this case.

Respectfully submitted,

*/s/ William M. Connelly*
William M. Connelly (0051154)
Steven R. Smith (0031778)
Tammy G. Lavalette (0071533)
CONNELLY, JACKSON & COLLIER, LLP
405 Madison Avenue, Suite 1600
Toledo, OH 43604
Telephone: (419) 243-2100
Facsimile: (419) 243-7119
wconnell@cjc-law.com
ssmith@cjc-law.com
tlavalette@cjc-law.com

Robert W. Trafford (0024447)
L. Bradfield Hughes (0070997)
PORTER, WRIGHT, MORRIS & ARTHUR, LLP
41 South High Street
Columbus, OH 43215
Telephone: (614) 227-2000
Facsimile: (614) 227-2100
tmiller@porterwright.com
rtrafford@porterwright.com
bhughes@porterwright.com
Counsel for Plaintiff
Cooper Tire & Rubber Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing Plaintiff's Pre-Hearing Memorandum Regarding Defendant's November 12 Letter to the Court was served by electronic mail this 28th day of November, 2005, upon the following:

>Jason M. Shinn
>24001 Country Squire Street, Apartment 206
>Clinton Township, MI 48035
>jmshinn@yahoo.com
>
>*Defendant, Pro Se*

_____
Attorney for Plaintiff

16

COLUMBUS/1267994 v.01