FILED

**FILED UNDER SEAL**
**UNDER ORDER SEALING RECORD** DEC 16 PM 3:28
**DATED FEBRUARY 24, 2005**

DISTRICT COURT
DISTRICT OF OHIO
TOLEDO

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Cooper Tire & Rubber Co.

Plaintiff

v.

Jason M. Shinn

Defendant.

Case No. 3:05CV7063

Judge David A. Katz



**UNDER**
**SEAL**

## DEFENDANT'S PARTIAL OBJECTION IN PLAINTIFF'S RENEWED MOTION ENFORCING SETTLEMENT

Mr. Shinn agrees with Cooper Tire that the parties should continue to resolve this litigation but by finishing the procedure that the parties previously agreed upon and have been implementing since, at the latest, August 12, 2005. This procedure is substantially completed but was halted after Cooper Tire refused to implement the remaining procedures as evidenced in certain exhibits discussed below. Cooper Tire's request to now choose a different procedure other than the one it insisted upon,

drafted, and executed does not make logical sense nor is it legally possible.[1]

## I.   Introduction
Cooper Tire filed an unnecessary motion to enforce settlement.

The parties' settlement consists of two documents:

- A Settlement Agreement dated March 22, 2005 (the "Settlement Agreement"): and

- An Agreed Entry dated August 12, 2005 (the "Agreed Entry"), which actually implements the technical and logistical steps necessary to resolve this litigation.

These documents will collectively be referred to as the "Settlement Documents."

Mr. Shinn, on October 26, 2005, requested from the Special Master, Kroll Ontrack, a document that was a necessary step to continue the resolution of this litigation under the Agreed Entry. This request is found in the email attached as **Exhibit A**. Cooper Tire objected to Mr. Shinn's request and essentially halted all steps under the very Settlement Documents it is now purporting to enforce. See **(Exhibit B)**. But in actuality Cooper Tire is seeking to avoid its obligations under the

---

[1]  Mr. Shinn also clarifies a misstatement perpetuated by Cooper Tire with respect to the recent hearing presided over by the Hon. Carr.  Mr. Shinn never accused this Court of any wrongdoing.  Instead, Mr. Shinn requested of Cooper Tire's counsels an explanation for comments made by its attorneys' about an improper relationship with the Court. And Judge Carr actually found that there was independent corroboration for comments made by Cooper Tire's attorneys about their relationship with this Court. This independent corroboration comes from the testimony of Mr. Lindell.

Settlement Documents it drafted, insisted upon filing with the Court, and executed. Furthermore, at every step it was advised by its numerous, sophisticated, and experienced attorneys.

Cooper Tire's true motives for filing its purported Motion to Enforce are illuminated by a new agreement it is proposing to enter into instead of carrying out the Settlement Documents. This alternative proposal was submitted to Mr. Shinn on the heels of Cooper Tire's most recent motion:

...we intend to push forward to get a sanction order ...However, if we were able to work this out by agreement we would consider asking that the imposition of sanctions be held in abeyance to be finally imposed if the deletion/disabling process is not promptly completed or the injunction to be entered is violated.

**See Exhibit C** Email from Buzz Trafford dated December 12, 2005.

Mr. Shinn request that this Court simply order Cooper Tire to follow through with the Settlement Documents, i.e., the agreements and obligations that the parties have been operating under since August 12, 2005. To this extent, Mr. Shinn actually agrees with Cooper Tire: the parties should continue to resolve this litigation with by implementing the procedures agreed to in the Settlement Documents.

But Cooper Tire's request to enter into the agreement outlined in **Exhibit C** instead of carrying out the already existing Settlement Documents should be denied:

- Cooper Tire has already conceded that this matter is settled by the Settlement Documents and under the general rule that a party who has taken advantage of a judgment or order may not afterwards question its validity, the relief Cooper Tire seeks – reopening up negotiations – is not permitted.

3

- Cooper Tire's own legal authority previously provided to this Court with respect to the solemnity of complying with the settlement agreements at issue and their enforcement make it clear that its request must be denied. Especially in the context that these are the agreements Cooper Tire *insisted upon, drafted,* and *executed.*

- Under Civ. R. 53(g)(2), Cooper Tire had 20 days to object to the procedure in place that was to be carried out by the Special Master. This procedure was entered on August 12, 2005. And Cooper Tire admits that it had sufficient information to make the objection it is now making on August 23, 2005. Consequently, Cooper Tire has waived the objection it attempts to make in its motion.

## II. Cooper Tire seeks to avoid its obligations under agreements it drafted, executed upon the advice of multiple attorneys and previously sought to enforce.

Cooper Tire entered into multiple agreements that it now seeks to avoid. Cooper Tire admits that it submitted to this Court the August 12, 200 Agreed Entry, which set forth the procedures to bring this litigation to a close. See **Brief, p. 6,**[2] **7.**[3] The Agreed Entry was drafted and signed by Cooper Tire's counsel.[4]

---

[2] On August 12 Cooper Tire, as reflected by the docket, submitted the Agreed Entry to the Court.

[3] Cooper Tire agreed to the procedure [in the August 12 Agreed Entry].

[4] This document does not include any recitals that it is based on representations made by any party. The only formal representations made by Mr. Shinn were in the March 12 Settlement Agreement (See Footnote 5 of this document). Nor did the parties discuss any such representations in connection with the document. Despite these facts, Cooper Tire now asserts that it – a sophisticated litigant, represented by equally sophisticated counsel – only entered into based on the "blessings" of the Special Master in this litigation and on Mr. Shinn's representations that Cooper Tire attempts to support with an email dated after Cooper Tire executed any of the agreements that reads expressly states that Mr. Shinn made no affirmative representation of fact and, instead, only offered information based on his recollection.

### III.    Cooper Tire objected to Mr. Shinn's compliance with the agreements the parties had signed.

In compliance with this Agreed Entry, Mr. Shinn actually requested certain documentation called for under this Entry on October 26, 2005 that was necessary to bring this litigation to a close. (**See Exhibit A**).

Cooper Tire objected to this initiative by refusing to consent[5] to Mr. Shinn initiating the process the parties had agreed upon. **See Exhibit B**). Cooper Tire went so far as to threaten to seek judicial intervention if Mr. Shinn insisted upon following through with the Settlement Documents that Cooper Tire had drafted, signed, and entered with the Court. **See Exhibit B**).

Then, on or about November 11, 2005, Cooper Tire contacted Mr. Shinn and requested that he agree to enter into a new procedure and disregard the procedure outlined in the Settlement Documents and previously agreed upon by the parties. But under this new proposal, Cooper Tire sought to avoid its obligations under the previous procedure and impose these obligations on Mr. Shinn.

More troubling is that this agreement is now much broader than either party ever agreed to. For example, Cooper Tire now takes the position that "we believe at this point anything referring to Cooper Tire should not be transferred to your new hard drive." See **Exhibit D**.

---

[5] No where in any of the settlement agreements does it state that Cooper Tire's consent is required to carry out the steps necessary to resolve this litigation.

Thus, Cooper Tire is now expansively seeking the information it is seeking to suppress. [6] It is also asking this Court to enforce a broad content based restriction on information protected by the applicable state and federal laws.[7]

Even if Cooper Tire sought a content neutral injunction, it would still violate existing federal and state law.[8]

Under the existing Settlement Documents and the procedures they establish, assume that Mr. Shinn has possession of non-Cooper Tire Information, i.e., information that he was given or obtained after his professional relationship with Cooper Tire ended on March 2, 2004. But assume that this information concerned some aspect of Cooper Tire. Under the existing Settlement Documents, if the parties could not agree on the disposition of this non-Cooper Tire information, then an in-

---

[6] As Cooper Tire is well aware, this litigation originally <u>only</u> involved information that Mr. Shinn gained during his professional relationship with Cooper Tire. During the litigation, it was established that this relationship ended, at the latest, on March 2, 2004. Cooper Tire offers no legal basis for claiming ownership or control over the disposition of material that was gained after March 2, 2004. Mr. Shinn, however, concedes that this Court has the right to control information that has been filed in this litigation.

[7] The United States Supreme Court has declared that "[c]ontent- based regulations are presumptively invalid." **R.A.V. v. St. Paul** (1992), 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305. Generally, a content-based regulation, that which "stifles speech on account of its message, or that requires the utterance of a particular message favored by the Government, contravenes th[e] essential [First Amendment] right," and therefore is subject to strict scrutiny. **Turner Broadcasting Sys. v. Fed. Communications Comm.** (1994), 512 U.S. 622, 641-642, 114 S.Ct. 2445, 129 L.Ed.2d 497.

[8] A content-neutral injunction cannot burden more speech than necessary to serve a significant government interest. See, e.g., **Carroll v. President and Comm'rs of Princess Anne**, 393 U.S. 175, 184, 89 S.Ct. 347, 353, 21 L.Ed.2d 325. Thus, an injunction must be couched in the narrowest terms that will accomplish its pinpointed objective. See **Id.**, at 183, 89 S. Ct., at 352-353.

6

camera inspection could take place whereby the Court would resolve the matter. This is what the parties agreed to.

But under Cooper Tire's proposal in **Exhibit C**, the burden of establishing that this information is not subject to this litigation is thrust upon Mr. Shinn and he must carry this burden under the threat of sanctions for not "promptly" completing the processing of this electronic information. Also, based on **Exhibit D** it is seeking to impose draconian procedures whereby Mr. Shinn would essentially be forced to ask "permission" to review information that has no basis to be regulated other than the fact that it "concerns" Cooper Tire.

Mr. Shinn substantially agreed to this proposal if Cooper Tire were willing to provide certain consideration, i.e., Mr. Shinn was willing to assume obligations and burdens he had not bargained for under the existing Settlement Documents in exchange concessions outlined in his response. Among these concessions was a monetary request. Again, Mr. Shinn was only responding to Mr. Trafford's offer when he submitted his response.

Cooper Tire is simply trying to use the Court to interfere with a private, enforceable agreement so it can obtain what it would otherwise have to make concessions for.

**IV.   Cooper Tire is not entitled to disregard its obligations under the express language of agreements it drafted, executed, and insisted upon implementing. Furthermore, its assertion for this entitlement is not supported by the facts.**

Cooper Tire is now asking this Court to interfere with the parties'
private and enforceable Settlement Documents and to allow Cooper Tire
to avoid its obligations it – a sophisticated corporate litigant – drafted,
agreed to in writing and executed under the advice of its equally
sophisticated, experienced counsel. See **Exhibit C.** Cooper Tire does not
provide any legal authority for such an audacious request. Instead, it
only gives two excuses being entitled to this "do over:"

> **A. Cooper Tire blames Kroll for giving its blessing to the
> procedure Cooper Tire drafted, insisted upon, and
> executed. Cooper Tire, however, omits any discussion of
> Kroll providing information about the amount of
> information Cooper Tire now complains about. (*See*
> *Cooper Tire's Brief, p. 3 and 7*[9]).**

This assertion must fail. First Kroll acted as the Court's Special
Master under Fed. R. Civ. 53. It was not required to "bless" anything. It
was not appointed to act as any of the parties consultant. And any
objections that Cooper Tire thinks that it should have made with respect
to the **August 12, 2005** Agreed Entry must have been made with in 20
days of the Entry. **Fed. R. Civ. 53(g)(2).** Cooper Tire admits that it had
sufficient information on **August 23, 2005** to object or move to modify
the Agreed Entry. See **Cooper Tire's Brief, p. 7.**[10] It did not make any

---

[9] "… procedures *both parties* had agreed to, with Kroll's blessing …" (Emphasis in the original).

[10] "The impracticalities of the procedures established in the Court's Civ. R. 53(b) Order – procedures *both parties* had agreed to, with Kroll's blessings – was not evident until Kroll conducted keyword searches of Mr. Shinn's hard drive … [o]n August 23 …"

such objection and, therefore, has waived its right to now bring its present motion.

It is entirely inappropriate for Cooper Tire to blame any discontentment with the present agreements on Kroll as Kroll fully advised the parties of probable or likely circumstances that Cooper Tire is now unjustifiably complaining of. These warnings took place in phone calls and the Court need only ask Kroll – either Michael De la Cruz or Nate Lindall.

Second, Cooper Tire has a vast array of resources suitable for making informed decisions with respect to the type of electronic discovery at issue in this case. Indeed, Cooper Tire's in-house counsel and Assistant Secretary and Corporate Officer, Jay McCracken, was one of the participants responsible for drafting the influential Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production, which was referred to in drafting the revisions to the federal rules addressing electronic data, i.e. the very issues that are before this Court. It is therefore, beyond belief that Cooper Tire can even assert it lacked sufficient resources to make an informed decision with respect to the Settlement Documents it drafted!

Cooper Tire should not be permitted to now claim that despite ignoring the information provided by Kroll and apparently failing to use its own formidable resources to change midstroke the direction of this litigation – a direction that it has insisted upon.

**B. Cooper Tire asserts it entered into the agreements not based on its Counsel's recommendations or any of its resources it had available to it but based on vague, informal representations by Mr. Shinn, which were prefaced with the cautionary proviso "to the best of his recollection."**

The only formal representations that Mr. Shinn ever made were in the March 22, 2005 Settlement Agreement.[11] Any further conversations by Mr. Shinn were always prefaced with to "best of my knowledge". Ironically. Mr. Shinn told Cooper Tire's counsel, Brad Hughes. that he was reluctant to make any guesses as to what he may have because of Buzz Trafford's propensity to later twist and use Mr. Shinn's statements against him.

---

[11] This Agreement reads:

- Shinn agreed to deliver all documents in his possession created or transmitted by him relating to Cooper Tire to a trustee at National City Bank. (Agreement at ¶ 4).

- Shinn acknowledged that the documents he would provide to the trustee were indeed "subject to the Modified Temporary Restraining Order and the permanent injunction to be entered by the Court." (Agreement at ¶ 5).

- Shinn agreed to the appointment of Kroll Ontrack, Inc. to inspect and analyze his computer to identify what, if any, additional Cooper Tire information remained there. (Agreement at ¶ 2).

- Shinn agreed to "ask the Court to enter a permanent injunction embodying the injunction as set forth in paragraph 1 of the Modified Temporary Restraining Order and agree[d] that the Modified Temporary Restraining Order shall be continued until the Court enters the permanent injunction." (Agreement at ¶ 1).

Cooper Tire's assertion that it was somehow tricked by Mr. Shinn is implausible. First, the only support for this assertion is based on an email *after* Cooper Tire drafted and signed any of the agreements – August 12, 2005, the Agreed Entry, being the last such agreement – at issue. And this email actually reads to the "best of [Mr. Shinn's recollection."

Second, Cooper Tire has said everything but Mr. Shinn is a liar. Read any of its "throw as much garbage at the wall and see what sticks" styled pleadings and this is perfectly clear. So the question is how can Cooper Tire plausibly state it relied upon any assertion that Mr. Shinn made when it expressly acknowledges it doesn't trust Mr. Shinn.

For example, before litigation was filed, Mr. Shinn represented in writing that the litigation was unnecessary as he would – and continues to do so – comply with his attorney obligations. Again, Cooper Tire refused to accept this representation from Mr. Shinn and filed suit.

Mr. Shinn simply ask that he be allowed to comply with the agreements that Cooper Tire drafted, signed, and filed with the Court so that this litigation may finally end. To this end, Mr. Shinn respectfully ask that this Court enter an Order directing the parties to comply with the procedure outlined in the Agreed Entry that was filed with this Court on August 12, 2005.

**V.     Cooper Tire has a solemn duty to perform its obligations under the agreements it entered into with regard to settling this matter.**

In support of this request, Mr. Shinn adopts the legal reasoning Cooper Tire previously provided this Court with respect to the solemnity of entering into a settlement agreement found in its Motion for Order Enforcing Settlement Agreements and the authority for this Court to enforce such agreements:

> *"Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out."*
>
> *---Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir. 1976).

See **Cooper Tire's Motion for Order Enforcing Settlement Agreements, p. 3.**

Furthermore, like any other contract, a settlement agreement voluntarily entered into by the parties cannot be repudiated, and will be summarily enforced by the Court. ***Aro Corp.*** at 1372.

**VI.    Cooper Tire has correctly asserted that this matter is settled and is, therefore, estopped from the relief it is seeking.**

Cooper Tire seems to forget that its experienced and sophisticated counsel lectured – via pleadings – this Court and Mr. Shinn that this matter is settled:

> What Shinn seems to forget, and what this Court should remind him in the form of an Order enforceable via contempt with clear sanctions, is that *the parties already settled this case.*

**Cooper Tire's Motion for Order Enforcing Settlement Agreements, p. 9.**

Under Ohio law, the general rule is that a party who has taken

advantage of a judgment or order may not afterwards question its

validity. *City of Columbus v. Mosko Realty Company* (Franklin App.

1958), 79 Ohio Law Abstract 83, at 84. Cooper Tire received the benefit

of the Settlement Documents it drafted and executed, which it

subsequently filed with the Court. It, therefore, cannot now question the

validity of these documents after having insisted upon and actually filing

these documents with the Court.

Cooper Tire would agree, but for its selective amnesia, that this

Court should remind it in the form of an Order enforceable via contempt

with clear sanctions is that this matter is settled. [12]

### VII. Any litigation cost incurred by Cooper Tire was unnecessary as it had written assurances that Mr. Shinn would maintain his obligations with respect to information he gained during his professional relationship with Cooper Tire.

The cost for this litigation is the fault of Cooper Tire. Mr. Shinn

and his counsel of record at that time represented in writing that Mr.

Shinn would continue to respect his obligations to any information he

gained in his professional representation of Cooper Tire. In summary, at

no time did Mr. Shinn intend to disclose such information and to the

extent that Cooper Tire misconstrued anything to the contrary, Mr.

---

[12] **Cooper Tire's Motion for Order Enforcing Settlement Agreements, p. 6:**

Although Cooper Tire, Shinn's former counsel of record, and the Court all understood

that this matter was settled pending the *agreed-upon* work by the Special Master, and the *agreed-*

13

Shinn agreed to provide written assurances that he would respect his obligations.

Instead, Cooper Tire filed suit using its vast resources, counsel, and money to tie Mr. Shinn up in litigation that has spanned almost a year. This has been a crusade against Mr. Shinn who, as a second year associate raised ethical issues regarding the handling of Cooper Tire's product liability litigation. And to the extent Cooper Tire seeks to paint Mr. Shinn as brash and not credible, it has not explained why a senior attorney – John Czarnecki – after having the opportunity to review the same information available to Mr. Shinn agreed with Mr. Shinn's concerns. Nor has it explained why its own in-house counsel – Dusty Tinsley and Jay McCracken – stated they would never sign any pleading on behalf of Cooper Tire because of the inaccuracies and outright misstatement of facts in pleadings, filings, and affidavits. Furthermore, it cannot explain away Joe Thacker's email regarding Cooper Tire's failure to comply with its California discovery obligations. This email was only sent after Mr. Shinn raised his ethical concerns.

And if this Court would like further examples of the concerns Mr. Shinn raised, it should simply ask Cooper Tire to produce the Report and Recommendations authored by Joe Thacker and given to Joe Kline. In this document, Mr. Thacker states that Cooper Tire's discovery process is

"definitely broken"[13] and resulted in discovery sanctions for its legal obligations. Mr. Thacker goes onto explain that the under the "broken" system Cooper Tire failed to meet its discovery obligations by reviewing its various plants for responsive documents.

He also discusses Cooper Tire's removal of documents from a court ordered document production without notifying the court or plaintiffs' attorneys. Cooper Tire <u>never</u> submitted any type of privilege log regarding the removal of these documents. The removal of these documents was done secretly and deliberately after being selected for production.

This same broke system was still being used by Cooper Tire a year after Cooper & Walinski, per Joe Thacker, assumed responsibility for the discovery process as its "national discovery counsel."

The above summary and incomplete recitation of conduct that *at least* raises legitimate ethical concerns also illustrates another point about the futility and unnecessary litigation Cooper Tire chose – at its peril – to pursue: Regardless of what electronic information may or may not reside on Mr. Shinn's hard drive, he can substantially recall it and recreate if he wanted to. This statement is based on the fact that all of the preceding facts about the Cooper Tire's "broke" discovery process were recreated from memory without referring to ANY DOCUMENTS.

---

[13] I can speak unequivocally and with certainly about this description both because of the impact it has and because I recall reading the report and thinking myself that the statement this description was found in would definitely be Exhibit A for any litigation against Cooper Tire.

Given this fact. Cooper Tire's only intention for pursuing litigation was to harass Mr. Shinn.

## VIII. Conclusion

Simply put, Cooper Tire's Renewed Motion is nothing less than a direct repudiation of the agreements the parties – and the Court – signed to resolve this litigation. For these reasons and those set forth above. Mr. Shinn seeks an order from the Court compelling Cooper Tire to abide by its prior agreements, an award of the fees and costs incurred by Mr. Shinn in preparing this motion. and a clear statement of the sanctions to be imposed if Cooper Tire violates its agreements.[14] This request is even more compelling and deserving given that Cooper Tire is now before this Court contradicting the very position it previously advocated for in this proceeding.

Alternatively, Mr. Shinn would just like this litigation to be over with by going forward with the Settlement Documents the Parties had agreed to. Mr. Shinn attempted to comply with the Agreed Entry on

---

[14] Cooper Tire should recognize this language as it is substantially the same it previously made in its **Motion for Order Enforcing Settlement.** See p. 7:

Put simply, Shinn's June 20 submission is nothing less than a direct repudiation of the agreements the parties—and the Court—signed to resolve this litigation. For these reasons and those set forth below, Cooper Tire seeks an expedited hearing, an order from the Court compelling Shinn to abide by his prior agreements and acknowledgments, an award of the fees and costs incurred by Cooper Tire in preparing this motion, and a clear statement of the sanctions to be imposed in the event Shinn violates his agreement and the requested Order Enforcing Settlement.

October 26, 2005 and Cooper Tire halted this process. The Court should just let the process go forward so that the Parties and this Court can be done with this matter.

Respectfully submitted,

Jason M. Shinn (0074267)
33321 Ludwig Drive
Rockwood, MI 48173

### Certification

This certifies that a copy of the foregoing has been sent on December 13, 2005 via ordinary U.S. mail to Robert Trafford Porter, Wright, Morris & Arthur 41 South High Street Columbus, OH 43215-6194, Counsel for Plaintiff.

Jason M. Shinn

# EXHIBIT A

# YAHOO! MAIL

Print - Close Window

**Date:** Wed, 26 Oct 2005 08:10:16 -0700 (PDT)

**From:** "Jason Shinn" <jmshinn@yahoo.com>

**Subject:** CT/Report

**To:** nlindall@ontrack.com

**CC:** "L. Bradfield Hughes" <bhughes@porterwright.com>, "Buzz Trafford" <rtrafford@porterwright.com>, "Bill Connelly" <wconnell@cjc-law.com>, jmshinn@yahoo.com

Nate,

I am requesting that Kroll provide me with the report called for under the original agreement so that the time line and process called for under this agreement will begin. Cooper Tire has been unable or unwilling to make a decision with respect to the hard drive replacement option that has been under discussion. In fact, attempts to communicate with Cooper Tire on this point and to bring this matter to a close have been derogatory referred to as "pestering." Furthermore, given Cooper Tire's "principled opposition"* to paying for any of the replacement costs, it appears that there is no further need to continue this discussion. This is unfortunate given that it appeared that CT was given a more efficient and cost effective procedure than it had insisted upon.

Cooper Tire has indicated it does not intend to go forward with the agreed upon protocol with respect to its keyword search because of the number of hits incurred (this is after Kroll warned of this likely result). Instead, Cooper Tire, through Buzz Trafford, has indicated that Cooper Tire will likely propose that another keyword search is done until a number Cooper Tire deems to be reasonable is obtained. This may take multiple attempts as represented by Buzz. Such a renegotiation is not permitted under the parties agreement and will be treated as a breach of this agreement. In such an event, it may be necessary for you to become involved with further court proceedings.

Upon Cooper Tire's counsel's approval via an email reply to all of the above recipients, please contact me for the address to send a hard copy of the report to.   Thanks.

/s/

Jason Shinn

* As you are aware, the parties have discussed replacing the hard-drive, putting the old hard-drive into trust, and moving over files that I have selected to be placed onto the new hard-drive. These files would ultimately be analyzed, presumably with Cooper Tire's keyword list to confirm that no Cooper Tire information was transferred. Buzz Trafford indicated in varying communications (email and telephone) that the sticking point is Cooper Tire (Jim Kline) is philosophically opposed to spending the amount of money it would costs to buy a comparable hard drive. In other words, Cooper Tire does not have a strategic

# EXHIBIT B

# YAHOO! MAIL

**Subject:** RE: CT/Report

**Date:** Wed, 26 Oct 2005 11:33:39 -0400

**From:** "Hughes, L. Bradfield" <BHughes@porterwright.com>

**To:** "Jason Shinn" <jmshinn@yahoo.com>, nlindall@ontrack.com

**CC:** "Trafford, Robert W." <RTrafford@porterwright.com>, "Bill Connelly" <wconnell@cjc-law.com>, MDeLaCruz@KrollOntrack.com

Jason,

On October 20, I noted in an e-mail that Kroll had suggested two
alternative procedures with respect to Step 5 of the proposed
replacement hard-drive protocol, regarding how the replacement image
would actually be analyzed for CT information--certainly a key step in
the process we were working through. I asked you if you had a
preference among those two alternatives. On that same day, you
responded in an e-mail that you did not have that information in front
of you, but that you would "get back to [me] later on this point." As
of yet, you have not gotten back to me on that point, and I think it is
unreasonable for you to continue to press CT for a decision on a
replacement-hard drive protocol that, by your own admission, has not
even been finalized.

As I noted in an e-mail last week, I was out Friday and Monday for
medical reasons and requested your patience. Buzz is out of the office
this week and Kroll's engineer is unable to travel until November
anyway. I think that your request to Kroll for the multi-million hits
report is unnecessarily hasty and unfortunate given the progress the
parties have made so far on negotiating a possible replacement
hard-drive protocol. This e-mail does not constitute CT's "approval"
of
your request to Kroll, because CT is still trying to work with you on a
replacement hard-drive protocol.

--Brad

-----Original Message-----
From: Jason Shinn [mailto:jmshinn@yahoo.com]
Sent: Wednesday, October 26, 2005 11:10 AM
To: nlindall@ontrack.com
Cc: Hughes, L. Bradfield; Trafford, Robert W.; Bill Connelly;
jmshinn@yahoo.com
Subject: CT/Report

Nate,

I am requesting that Kroll provide me with the report
called for under the original agreement so that the
time line and process called for under this agreement
will begin. Cooper Tire has been unable or unwilling
to make a decision with respect to the hard drive
replacement option that has been under discussion. In
fact, attempts to communicate with Cooper Tire on this
point and to bring this matter to a close have been
derogatory referred to as "pestering." Furthermore,
given Cooper Tire's "principled opposition"* to paying
for any of the replacement costs, it appears that
there is no further need to continue this discussion.
This is unfortunate given that it appeared that CT was
given a more efficient and cost effective procedure
than it had insisted upon.

Cooper Tire has indicated it does not intend to go
forward with the agreed upon protocol with respect to
its keyword search because of the number of hits
incurred (this is after Kroll warned of this likely
result). Instead, Cooper Tire, through Buzz Trafford,
has indicated that Cooper Tire will likely propose

# EXHIBIT C

 **MAIL**

Print - Close Window

**Subject:**

| | |
|---|---|
| **Date:** | Mon, 12 Dec 2005 19:23:44 -0500 |
| **From:** | "Trafford, Robert W." <RTrafford@porterwright.com> |
| **To:** | "Jason Shinn" <jmshinn@yahoo.com> |

Jason:

By now you should have received both Judge Carr's opinion and Cooper Tire's Renewed Motion to Enforce and for Sanctions.

It is our intention to ask that the motion to enforce and request for sanctions be set for expedited hearing in the hope it can be heard before year-end.

We remain willing to discuss entering into an agreement to complete the deletion or disabling of access to Cooper Tire information from your Yahoo! Account and hard-drive along the lines I had proposed before you sent your letter to Judge Katz and your settlement demand to Cooper Tire. Without intending to reduce our proposal to writing here, in brief, it involves providing a new hard drive and software and, instead of deleting Cooper Tire information from the current hard drive and moving everything else on to the new hard drive, you would identify only clearly non-Cooper Tire information and move it to the new hard drive, leaving the Cooper Tire information on the old one and putting it storage under the same arrangements as the documents last Spring. We would then verify the absence of Cooper Tire information on the new hard drive by doing a key word search, etc. I think this is similar to what you proposed in your November 13 settlement demand, less the $10,000 (if I am wrong about it being similar, what I am proposing is what I have briefly described here and not what was in your proposal). At this point, we intend to push forward to get a sanction order, and believe that we have laid a solid evidentiary basis for such an award. However, if we are able to work this out by agreement, which I have always believed was best for everyone, we would consider asking that the imposition of sanctions be held in abeyance to be finally imposed only if the deletion/disabling process is not promptly completed or the injunction to be entered is violated.

I will be generally available on Tuesday, and you can reach me by email or by calling my office. Buzz

**********Notice from Porter Wright Morris & Arthur LLP**********
This message may be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read, print or forward it. Please reply to the sender that you have received the message in error. Then delete it. Thank you.

To comply with certain U.S. Treasury regulations, we inform you that any federal tax advice contained in this message, including attachments, is not a covered opinion as described in Treasury Department Circular 230 and therefore cannot be relied upon to avoid any tax penalties or to support the promotion or marketing of any federal tax transaction.
*********************End of Notice*********************

# EXHIBIT D

 **MAIL**

**Subject:** RE:

**Date:** Tue, 13 Dec 2005 14:43:14 -0500

**From:** "Trafford, Robert W." <RTrafford@porterwright.com>

**To:** "Jason Shinn" <jmshinn@yahoo.com>

Jason:

I have attached a copy of Judge Carr's decision in PDF form.

The grounds for the sanctions are both Judge Carr's detailed factual findings and what we are convinced we can show by way of the lack of good faith cooperation in completing the settlement agreed to in March, including the profane phone call, the two attempts to get cash payments for implementing the March agreement, the false accusations against Cooper Tire, Bill Connelly and Judge Katz, etc. (The original motion for sanctions was merely held in abeyance under the August 12 order.) All clearly comes under 28 U.S.C. § 1927, and we believe we have a very, very compelling case for at least $30-$40,000 in fees and expenses (and when we add it all up it may be materially more) caused by the difficulties we have encountered since March, 2005 and including the recent hearing and briefing. You repeatedly refer to the May and August agreed orders as if the protocols in those orders are carved in stone. Those protocols were agreed to based upon your representations regarding what you thought was on our hard drive. It turns out those representations are not accurate. Moreover, the May and August orders implement the March settlement, which requires the deletion and disabling of access to all Cooper Tire information. You have rebuffed reasonable efforts to do that, at each turn seeking to leverage the burdens created by protocols agreed to based upon inaccurate representations of what was on your had drive into monetary payments or other concessions to you.

With respect to our proposal, we believe at this point anything referring to Cooper Tire should not be transferred to your new hard drive. We have lost all patience with efforts parse what is or is not on your hard drive. We have no interest n a process that may lead to more disagreements and believe the court will agree that you have had a reasonable opportunity to accomplish this in a way favorable to you and that you have misused that opportunity. To the extent you ever need access to anything not transferred, that access would be provided for under the same conditions as the hard copy documents already in trust. If there are a small number of documents that you think you may need access to for some reason, those could be printed in hard copy to facilitate review under the trust arrangement.

I am available tomorrow to discuss this, but because we are anxious to get this long-delayed process completed, we will move forward with the request to expedite. Even if we are able to reach agreement -- which we can do either quickly at this point given our familiarity with the situation or we are not interested in trying -- we will want to have an in person conference with Judge Katz to nail it down once and for all. Please let me know if there is a time to discuss this if you are interested.
Buzz

**From:** Jason Shinn [mailto:jmshinn@yahoo.com]
**Sent:** Tuesday, December 13, 2005 1:02 PM
**To:** Trafford, Robert W.
**Subject:** Re:

I have not seen judge carr's opinion. Given the filing of you motion, I assume it went in your favor. And I just received the hard copy of CT's motion yesterday night but I have not had time to look at it. I was unable to view a printable form of the electronic copy sent to me, which I notified Bill's office on Sunday.

Are you available to discuss whatever may need to be discussed tomorrow? One question I have with respect to verifying the absence of CT information: CT information is defined as information that I gained during my professional relationship with CT.How are you proposing to deal with information that may involve CT but does not fall into the category of "CT Information?" You indicate that I would select info that is "clearly not CT information." I foresee you using any attempt on my part to protect non-CT information but that none-the-less involves CT as a